We will hear argument first this morning in case 19-863, Niz-Chavez v. Barr. Mr. Zimmer? Thank you very much, Mr. Chief Justice, and may it please the Court. The statute's text and the changes Congress made in IRIRA unambiguously established that a notice to appear is a specific notice document. As a textual matter, the government simply cannot explain why Congress used the phrase a notice if what it really meant was simply notice in the text. Even more remarkably, though, the government all but concedes that accepting its interpretation means that Congress made significant changes to the statute in IRIRA for no reason at all. Before IRIRA, the statute authorized the very two-step notice process the government defends here. It required an order to show cause, but allowed the government to provide the time and place of the hearing, quote, in the order to show cause or otherwise, end quote. By the time of IRIRA, Congress had already begun the notice process. It burdened immigration courts, which were forced to resolve disputes about whether the government properly served the separate hearing notice, and, as this court noted in Pereira, it confused non-citizens by forcing them to piece together information across multiple documents that could be served years apart. So, in IRIRA, Congress created a new form of notice, a notice to appear. Congress largely copied the pre-IRIRA notice provisions, but, crucially for this case, Congress cut the language authorizing the government to provide time and place information in a separate hearing notice, and made that information a required part of a notice to appear. The government, however, refused for many years to comply with that change and to avoid the consequences of that refusal, and now asks this court to read that change out of the statute entirely and deprive Congress's explicit rejection of the two-step notice process of any meaning. This court, however, should give meaning to IRIRA's changes and should hold that a notice to appear, like an order to show cause, is a specific notice document that includes all of the information specified in the statute. That is the only way to make sense of the statute's text and structure, and it is the only way to read the statute that is consistent with IRIRA. Mr. Zimmer, would the stop-time rule be triggered if the alien received the two documents in two different envelopes on the same day? I mean, yes, Your Honor. Certainly, if it's not in the same document, we don't think—sorry, I guess no is the answer. If it's in two different documents, it does not trigger the stop-time rule, and I think that the point of that is that there's no way to distinguish that situation from the situation like my client's, where he received the notice two months later, or the situation in Pereira, where the government tried to serve it a year later, but didn't even serve it correctly, or the situation in Camarillo, where the government served the hearing notice two years later. I think what Congress was doing was trying to create a clear, firm rule that required that all the information be provided together. Well, I think you're probably right that there's no way to distinguish it, but if it gets to that absurd result that you've got two envelopes and you put them together, you get them on the same day, and it's got all the information that you're entitled to, that that's nonetheless not a notice to appear. Well, Your Honor, I don't think it's absurd in the sense that the whole point that Congress is trying to solve is that the hypothetical assumes that everything works effectively, and I think that often, as the House report shows, these hearing notices weren't being properly served. I think you're just fighting the hypothetical. It's certainly, if that were what had been done, that they were received at the same day, I doubt that that would have attracted Congress's interest. What if they're two separate documents in the same envelope? Well, I think if it's all provided together, it's effectively the same document. So I think if it's in the same envelope, then it is one document, and it would be a notice to appear. But I think that what Congress was doing here, the problem that Congress was trying to solve was that the problems that were caused when this information was served separately, and so it created this firm rule. And I think that it's very clear from the changes that Congress made that that's what it was doing, and it wasn't the same thing. But I thought your answer was to the effect that it's not a firm rule. If you have two separate documents, the fact that you get them in the same envelope, it seems to be a functional analysis of whether or not notice has been given as a matter of reality. I guess our position is that it all has to be provided together, and I think if it's all in the same envelope, it's provided together. I mean, I think that's sort of what the idea of a document is, whether it's on one pages or two pages, I don't think is the question, but if it's all in the same envelope, I mean, it is for all intents and purposes, a single document in a way that it's not if it's coming separately. But again, I don't think that what Congress is doing here, this idea, if the government can serve two envelopes that arrive on the same day, then surely it can just put all the information in one document and provide it together. And I think that's clearly what Congress intended that the government do here. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Zimmer, let's go back to 1229A for a second. There is no definition of a notice of appeal, or notice to appear, I'm sorry. The definition is written notice, and it says parenthetically in this section referred to as a notice of appeal, notice to appear. And you seem to put quite a bit of weight on a notice to appear. What if that was not there at all, that parenthetical did not appear there? Right. So I think this would be a very different case. And I think our textual argument would be a much more difficult one. And I think that at that point, there probably would be ambiguity in that provision. I still think at that point, that the history here, sort of the actions that Congress took in IRIRA and the changes that it made, would still be a compelling reason that we're right. But I think we would have a much harder argument. But of course, this and bond, that it is appropriate to consider the defined term itself in understanding definitional language. And that's why the phrase a notice to appear is particularly important here. Again, I go back to what the statute says. The statute refers to written notice, and it defines written notice. It does not define the parenthetical. The parenthetical simply says referred to as. It didn't say that that is what was being defined. So it would seem that you would have to rely on the reference, not the definition. Right. Well, I think that under the way Pereira described this provision is that you have a defined term, a notice to appear, and then definition is written notice specifying that information. And again, I think under cases like Gustafson and Bond, when you're trying to understand the definition, I think that the definition, sort of the written notice language that you're talking about, could be read either way. I think that in context, it doesn't explicitly require a specific notice document, but nor does it explicitly authorize the government to use multiple notice documents. And that's why under this court's precedent, it's necessary to look to other contextual clues, like the defined term itself, like the other statutory provisions that really don't make any sense if you're not talking about a specific notice document, and like the history and like what Congress actually did in IRIRA. So we're not arguing that absent the parenthetical, the statute would be unambiguous. I think it's unclear, but I think that the defined term and these other statutory provisions and the history of this provision really resolves that ambiguity and makes it clear that what Congress was talking about here was a specific notice document. Thank you. Justice Breyer? Fine. I have the same question as Justice Thomas. If you have anything else you want to say, go ahead. Yeah. If I could just sort of emphasize then the historical point, which I think is really the most revealing aspect of why any ambiguity in 1229A1 really has to be resolved in our favor, in the statute used to authorize the government to provide notice over the course of multiple documents. It used to define an order to show cause as a notice of specific information that did not include the time and place of the hearing. And that had a separate provision that authorized the government to provide time and place information in the order to show cause or otherwise. And in IRIRA, Congress specifically cut the language authorizing that the government provide a separate hearing notice and required that time and place information be provided as part of the notice to appear itself. And on the government's interpretation of the statute, that significant change to the statute's notice provisions accomplished practically nothing. It didn't change the government's notice requirements at all. And this court's precedents plainly require that significant changes to the statute be given a real and meaningful effect, and the government's interpretation would deprive it of that. And I think that's really the clearest reason why any ambiguity in the phrase written notice needs to be resolved, is necessarily resolved in favor of requiring a specific notice document, which is of course consistent with the defiance term itself. Thank you. Justice Alito? What if it turns out that the government has great difficulty at the time when notices to appear are issued in setting an appearance date that will be complied with in most cases? So suppose they put down appearance dates that are like 10% likely to hold up. Would that be sufficient? Yes, absolutely. I think that as long as the date is put down on the notice, then it becomes the date at which the non-citizen is required to appear. What if in 95% of the cases that turns out not to be the date? Yeah, I mean, I don't think that the non-citizen would have an opportunity to sort of bring some sort of statistical analysis as to whether it's likely to be the date. But I think that there's still a real important purpose served in having a date put on the notice to appear. The answer to that was the answer to that yes or no. If it's 95% likely to be changed, is that sufficient or can that be challenged? No, I don't think it can be challenged. I think that's sufficient. What if it's 99% likely not to be the real date? Yeah, no, I still think that's sufficient. We're not arguing that there's any kind of... If there's a date that's down on the piece of paper that is a date at which the hearing technically could take place, then the non-citizen is required to appear at that date. And by definition, that is at that point in time, the date and time of the hearing. But there's a real... Can I take you just back to the Chief Justice's question? So as I understood your answer, if the document that's labeled notice to appear and another document that sets the appearance date alive at the same time in two separate envelopes, that's not sufficient. But if they're in the same envelope, that's okay then? Well, yeah. Yes, I think if the information is provided together in one place, then that's accomplishing exactly what Congress is trying to accomplish by moving the time and place information from an optional part of the order to show cause to a required part of the notice to appear. I think that's exactly what Congress is trying to do and to avoid these types of disputes about whether the hearing notice was properly served. And I'll note, just to get back to your hypothetical, that it is really very much a hypothetical in the sense that the government has told this court in its brief that it can comply and that it is now largely complying with the statute's requirement and it's providing information about the actual hearing date up front. And that's not surprising. This court addressed this- If Congress was determined for the alien to get all of this information in one document, why does the statute allow the government to keep changing the actual date of the hearing? Well, I think it would be... I mean, I think that that's sort of just a necessary function of the fact that there are going to be times when the hearing has to change for a whole host of reasons. And I think it would have been unrealistic to say that once there's a date put down on the initial notice document, the government doesn't have... That that's sort of set in stone and can't be altered. But having- Thank you, counsel. Thank you. Justice Sotomayor? Counsel, can you explain why the individual information that's required by the statute to be in the notice of appeal, why each piece doesn't have independent value? And by that, I mean, what is the damage that you believe Congress was trying to avoid in doing piecemeal notices? Sure. The fundamental question that I think some of my colleagues have asked you so far is if each of the pieces of information have independent value, why would Congress have wanted to specify it in one document? Right. So let me give maybe three answers to that, Justice Sotomayor. I mean, as a big picture matter, if you look at the specific pieces of information that are required, they're all closely related in the sense that they're connected to the information that a non-citizen needs to defend herself against removal charges. You have things like the acts or conduct alleged to be in violation of law and the charges against the alien and the statutory provisions alleged to have been violated. To start providing the acts or conduct in one document and then a year later to provide the charges and then a year later to provide the hearing obviously makes little sense and could be incredibly confusing. But to be a bit more specific as to the time and place information itself, I think there were two concerns that were motivating the changes that Congress made in IRIRA. The first one was that Congress was sick of immigration courts having to resolve unnecessary disputes about whether this hearing notice was properly served. And you can see that in the House Judiciary Committee report, which specifically identifies this as a problem Congress was trying to solve. And you can see it if you look at pages 8 to 18 of the amicus briefs submitted by the former immigration judges and BIA members, which explains in detail the massive administrative problems that are caused by the two-step notice process. So I think Congress was trying to solve those problems. And then this court specifically noted in Pereira that providing a time and place information separately from the rest of the information in the statute can cause confusion. And it's cleaner and more straightforward for non-citizens to receive one document with all of this information that they can take to a lawyer or analyze themselves and not require them to sort of piece together assorted piece of information about the removal proceeding that are served over time. And so why is it that the ability of the government, because it's specified by statute, to change the time and place by telling the alien that, why doesn't that destroy your argument? Sure. Well, so first of all, I think it's just necessary to have some ability to change the hearing date. But also having some sort of date certain on the initial notice is extremely valuable because it means that if the subsequent hearing notice, so imagine there's no date on the initial notice. Then if there's a problem serving the subsequent hearing notice, then the person's in immigration court. But if there's a date on the initial hearing notice, even if it gets changed, imagine it gets changed and that subsequent hearing notice isn't properly served. Well, then the non-citizen still has to show up on the initially noticed date. And when that person arrives in immigration court, any confusion can be resolved and the person can then be given in-person notice of the new date. And that person already knows all the rights that the notice to the date has. Justice Kagan? Mr. Zimmer, if I could start right there, because I'm not quite sure I understand the point. As I understood, you said, well, it's less confusing because if the change in date never arrives, at least there's the date on the initial hearing notice. I mean, that could happen, but I would think what's more likely is that a change in date does arrive. And that seems more confusing to have the date change and maybe change more than once. So who are we helping here, really? Well, so I think the first, you know, frankly, I think the Congress is most concerned with helping immigration courts and making sure and then sort of ending with this two-step notice process that was causing significant problems, was causing all these unnecessary fights, because non-citizens would show up in court and say, I never received a hearing notice. If there's a date on the initial notice, you can't say that, because at the very least, you're required to show up on that date. So I think that, frankly, was what Congress's primary goal was. But I do think the Congress was also intending to help non-citizens in the sense that, yes, the hearing date can change. But I don't think there's any reason to think that if the government does its job, does what it frankly has told this court it is already now doing in light of Pereira, if the government does its job, then in a lot of cases, the hearing date won't change. And you will have a notice document that has all the information, including the date of the hearing. I just think it would have been too much to ask, understandably, that the government, once they put a hearing date on, that there's nothing they could do to change it. So I think that's just sort of bowing to reality, that you could have hearing notices. But I certainly think it's still very helpful to have all this information in one place. And Mr. Zimmer, you seem to be assuming that on the first document, you know, if your position is accepted, the government will put a date on the first document. But how about if it doesn't? How about if the government responds to a decision in your favor by saying, look, we're going to send the first document without the date. And sometime down the road, when we know the date, we'll send another document and it will be maybe a document with the date, with the old document stapled to it. Or maybe we'll just take the old document and stamp the date on it. So would that be permissible? I think it would be permissible. I think that, you know, I don't think it's what Congress would have expected the government to do, given that this process has a history going back to the 1950s. And I think it's important to keep in mind that for 20 years, from the 1950s to the 1970s, the initial notice document was required to have a date. The government doesn't dispute that, and it complied with that requirement. So, you know, and it didn't do this kind of two-step, put the date on later thing. So I think Congress, yes, it would be permissible. I don't think it's sort of the way Congress anticipated that the system worked. And again, I know that if you look at pages 41 to 42 of the government's brief, that's not what the government's doing. It is actually doing exactly what I described and providing, you know, an accurate date up front. Thank you, Mr. Zimmer. Justice Gorsuch? Good morning, Mr. Zimmer, and welcome back. Sure seems a little bit like a Pereira Groundhog Day to me. I guess I'm curious what your response is to the government's argument that it should just win under Chevron step two at a minimum. No harm, no foul, good enough for government work. If it's ambiguous, the tie goes to the government. Why should we care? Sure. So let me just give two responses. The first, Justice Gorsuch, is that it's not that if you just look at what Congress... Put that one aside for a moment. Got it. Yeah. So then I think that the... Assuming there is some ambiguity, I think my primary argument would be that what you have here is under Encino Motor Cars, the agency can't just sort of flip-flop back and forth between positions without explaining itself and yet claim deference. And that's exactly what's going on here. If you look at the posterior rulemaking, and this is at page 53A of our statutory and regulatory appendix, it specifically... Right after IRIRA, the government in rulemaking stated that the language of the amended act indicates that the time and place of the hearing must be on the notice to appear, and that's notice to appear with capitals, which the government admits is a specific notice document. And then in matter of Camarillo, the BIA says the same thing, that it's a specific notice document. In matter of Hordaz, the BIA says the same thing again. And then in Mendoza Hernandez, after Pereira, suddenly it reaches the opposite conclusion. The BIA doesn't even acknowledge these prior decisions. It addresses them in a largely unexplained footnote, footnote eight, which just describes them as flawed. And I think this is a classic example where the agency has made an unexplained change of position and is not entitled to deference, just its latest decision is not entitled to deference. I also think that the reasoning in Mendoza Hernandez is really just based almost entirely... It basically ignores the statute's text. It completely ignores the statute's history. It doesn't even acknowledge the changes that IRIRA made, even though those changes were addressed in the agency dissent. And that type of reasoning, just it's not the type of reasonable approach to statutory interpretation that this court requires and shouldn't be entitled to deference for those reasons too. And then last, although I don't think the court needs to reach this question given all these other issues, but we do think that it's necessary, as we explained in our brief, that the court could reconsider and should reconsider whether deference to an administrative, to the BIA's interpretation of pure questions of statutory interpretation should really ever be entitled to deference, since it doesn't really have any advantage over this court in interpreting statutes. And this is a proceeding that basically takes place in secret. This is an opinion that basically came out of the blue. No one other than the parties knew the agency was even considering this question. There was no opportunity for public input, let alone public input as to whether the agency was going to change its longstanding position on this. Thank you. Justice Kavanaugh? Thank you. And good morning, Mr. Zimmer. I want to pick up on what Justice Thomas was saying. The statute requires written notice. And as I mentioned, Section 1229A. So why doesn't that end the case? Right. Because, so I think that if you read that language in context, I don't think that even if you sort of take out everything else, I think that if you're talking about written notice specifying a set of interrelated information about the initiation of a legal proceeding, I don't think that that language is entirely clear. I think you can read it as requiring, you can read it either way, as requiring a specific notice document or as allowing the government to use multiple documents. And that's why it's so important to look to these other interpretive tools, like looking to the defined term itself, where it talks about a notice to appear and like the history. And I note, Justice Kavanaugh, that this phrase written notice was copied directly from the pre-IRS statute. So it was copied directly from the prior definition of an order to show cause. And I really don't think there's any way to read that statute as not requiring a specific notice document. I'm sorry to interrupt, but you're relying obviously on a notice to appear in the parenthetical, which does not, as Justice Thomas said, necessarily account for the term written notice in the text. I take your point about the context and the history. But also the problem I think that the Chief Justice and Justice Alito and Justice Sotomayor were raising or asking about was that, how does this make much sense in the real world? And let me just follow up on their questions. If you gave notice with everything, including the time and place, and then sent a second document with a new time and place, that's okay, correct? Yes, that's specifically allowed by the statute, yes. Exactly. So, but if you send a notice without the time and place and then send the second document with the new time and place, that's not okay, in your view? Absolutely. But that makes perfect sense given what Congress, you know, the changes that Congress made in IRIRA, because the whole problem that was being addressed here was that there were all these unnecessary disputes. The Congress was sick of these disputes about whether that... Weren't the disputes arising on removal in absentia proceedings? Exactly. Yeah, that's exactly right. But that's the whole point here, because what would happen is there would be no time and place in the initial notice document, and then the government would try to serve a separate hearing notice, and then there'd be a fight about whether that hearing notice was properly... You know, basically, the person would claim they didn't get the hearing notice, and that's why they didn't start... Congress was trying to cut off avenues for immigrants to argue against removal in absentia. Well, I think it was trying to avoid those fights, and I think it was... I don't... I'm sure that's exactly right, Your Honor. I think it was trying to avoid... One last question. I just want to get it in, which is you've relied a lot on the history, the legislative and statutory history, but the conference report says that this section is designed to, quote, restate the provisions, end quote, of current law. Right. I mean, it largely does, but I don't think that there's any way you can read... I mean, there are clearly, as Pereira makes clear, I mean, Pereira explicitly addressed this, there are some changes that were made, and you can't just read those changes out of the statute. So, in general, I think in almost all respects, it does restate the provisions of the prior law, but the one significant change it made is removing this language authorizing the two-step notice process, and I think if Congress wanted to allow the government to keep doing what it was doing, there's no reason it would have cut the language that explicitly authorized that practice from the statute. Thank you, Counsel. Justice Barrett? So, Counsel, I take it that under the government's approach, there's no dispute that the stop time rule starts running when notice is complete, so, i.e., when the noncitizen receives the time and place of the hearing. Is that correct? Sorry, just to make... Are you saying that we're not disputing that under the government's rule, our client receives the notice? Is that what you're asking? Right. So, I'm saying under the government's approach, the stop time rule runs when notice is complete and when the time and place are received. That's right, yeah. Okay, so here's my question. Justice Alito was saying, and you agreed, that the stop time rule would run when notice was complete, even if the government used a dummy date or a date that was 99 percent certain to be changed in the initial notice that contained everything. So, why isn't this rule actually worse for noncitizens? Because it'll mean that the stop time will start running earlier. Right. Well, so, Your Honor, this is... So, this is exactly the issue that this court addressed in prayer, and I think the court correctly recognized that the government is not going to provide arbitrary dates, but, you know, and that Congress wouldn't have assumed that the government would provide arbitrary dates, but... You told Justice Alito that that would... I mean, even if it's 85 percent not likely to happen, you told Justice Alito that would satisfy the rule. No, no, it absolutely would, and I'm not changing that. I'm just talking about in terms of why Congress would have set up this system, and I think the reason is that it would have... The government generally does not sort of provide arbitrary information to people, and it generally does its best to... That's true, but if DHS really can't coordinate with, you know, immigration courts because they can't put things on their docket, it may have no choice, you know, if the software doesn't handle things in every situation, but to give a date that it hopes for, but this rule would force them to put that date down. Let me go back to Justice Kagan's question. So, she pointed out that another way to satisfy this rule would be to send essentially what would be a draft notice containing all information except time and place the first time around, and then later, once the time and place was set, send the notice that would actually trigger the stop time rule that contained all the information, and you conceded that would be sufficient, but you resisted it, and I'm wondering why you're for the immigrant to have more information and to know in the beginning, well, this is what's coming. We're going to be initiating, you know, removal proceedings based on this information, and you can expect to hear the time and date later, and that's when the stop time rule will happen. Why do you resist Justice Kagan's scenario when it would result in the noncitizen getting more information? Sure. I mean, I don't resist it in the sense that I think that it's clear that I think that I resisted it only in the sense that I don't think that there's any reason to think that the government can't just provide accurate information in the first place, which is, you know, exactly what this court said in Pereira, and again, if you look at pages 41 to 42 of the government's brief, they're basically doing that now. So, I certainly don't resist in the sense that it is far preferable to what's happening now because the noncitizen does receive at some point all the information together. I just, I don't think it's even necessary for the government to do that in the sense that it's told the court it can provide accurate information that already is, in light of Pereira, is already largely providing accurate information in the initial notice. Thank you, counsel. A minute to wrap up, Mr. Zimmer. Thank you, Mr. Chief Justice. In conclusion, Congress could not have been clearer in IRI. The statute used to authorize a two-step notice process, an order to show cause, followed by hearing information in the order to show cause or otherwise. And in IRIRA, Congress cut the language authorizing the separate hearing notice and required the time and place information be included in the notice to appear itself. That change only makes sense if both the order to show cause and the notice to appear are specific notice documents. Accepting our interpretation of the statute simply requires that the government do what IRIRA clearly commands. And as I've been describing, the government plainly can do this. Indeed, as I was just mentioning to Justice Barrett, it told the court in its brief, at pages 41 to 42, that it has already largely done it. Accepting the government's position, by contrast, would allow the government to reverse the progress it has made since Pereira and continue indefinitely with the very multi-step notice process that IRIRA explicitly cut from the statute, a process that leads to precisely the notice lapses and confusion that Congress sought to avoid. Thank you very much. Thank you, counsel. Mr. Yang. Mr. Chief Justice, and may it please the court, the Board of Immigration Appeals adopted the best reading of the INA in concluding that Section 1229A's written notice requirement permits written notice to be provided in two documents, an NTA form and a notice of hearing. That conclusion flows directly from the statutory text. Section 1229A1's operative text specifies both the content and the form of the required notice. The content is listed in the subparagraphs one and with respect to form, the statute specifies that it must be in writing and must be served personally or by mail. Congress otherwise left the form of the notice up to the government and there is no dispute here the petitioner received written notice in that manner conveying all of the relevant information. No sound reason exists for precluding the use of a separate document to specify the time and date of an initial hearing. The government's rule treats situated alien similarly. If an alien receives all the required notice at the same time as another, it does not matter if the form of that notice is in one document or two. It reflects the standard rule of notice provisions, the purpose of which is simply to provide adequate notice. Petitioner, by contrast, would treat differently two aliens who receive notice of all the required categories of information at the same time based now on whether it's on one envelope or two. That rule is nonsensical and it is wholly out of step with the result in the design of ERIRA. This court in Pereira rejected the idea that the form of a notice document labeled notice to appear should control, holding instead that the proper focus is on the substance of the information required by statute. The court should do the same here by holding that the statutory text shows the substance of the notice, not its form as one or two documents controls. Mr. Yang, you can fix this whole problem or at least moot the dispute simply by sending a copy of the notice to appear when you send a notice of when the new hearing date is or when a hearing date is? By petitioner's concession, that would satisfy his test. Although there are some practical difficulties, and if I can explain those, EOIR issues hearing notices as the adjudicator of the charges. And serving an alien with an NTA form containing those charges has traditionally been viewed as a prosecutorial function, not one performed by the neutral adjudicator. For DHS, once EOIR issues the hearing notice, it would be administratively difficult to act with sufficient speed to combine the NTA form with that notice and re-serve both on the alien. Why would that? I'm sure you understand the intricacies more than I do, but whoever is sending out the updated notice to appear or the original notice to appear just has to attach what someone has already sent, which is the original notice to appear. Now, if it's the fact that the immigration office has to take the stapler together or the other way around, it doesn't seem to me that that should be terribly administratively burdensome. Well, on the immigration court side, I think it's traditionally been viewed, and I think they would view their position as not being one to serve the charges, to facilitate charges. But for DHS, this is the issue. Recall the hearing has to be set no earlier than the date of the service of the written notice. And if the written notice is the staple document, that's what we're going by. DHS would have to re-serve it. DHS's NTA form is in the alien's physical A file. The physical A file has to be retrieved, and it's not infrequently sent to the National Records Center in Missouri. It has to move from place to place, depending on what's going on. If the alien, for instance, seeks some benefit, it's sent to USCIS to adjudicate the benefit. It then might be sent back to the records center. So it's not uncommon that this is not local when the notice is issued. Now, we're not saying this can't be done, but it would be burdensome. Now, thank you. Thank you for that information. Do you argue that the error is harmless here, or at least will be harmless in many cases? We're not arguing harmless error here because the question is when the stop time rule stops, when the time stops, not whether there was an error. There would be harmless error arguments in, for instance, if a hearing was held without adequate notice, as determined by this court, we could have a harmless error in that instance. But in the stop time rule, we're not asserting that argument. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Yang, can you give me an example of other places in the U.S. Code or in your practices where you send multiple notices? Multiple notices. Well, I think I don't have a specific instance in the U.S. Code, but oftentimes there are notice and supplemental notice when there's new information that wasn't originally available. And I think that's the kind of situation that we have here in many contexts. Although in certain non-detained cases, we can issue and do issue a notice to appear with hearing aids, that's not the case. And it's not with many cases. And if I could explain why it's administratively difficult at the time you're issuing an NGA form to, I'm sorry, Justice, I didn't mean to interrupt from here. No, I think you didn't proceed. Okay. So it's administratively difficult, particularly for aliens arrested without a warrant. And this is a very frequent event, particularly at our borders. There are two considerations that are relevant there. First, it's the timing and the hearing and the location of the immigration court. Those things can depend on two things. Whether the alien is on the detained docket or the non-detained docket, the detained docket has to move much more quickly because they're detained and where the alien will be located during the removal proceedings. The second factor is that the government has to promptly issue an NGA with charges to the arrested alien, which DHS informs us often occurs before it has the detention and for instance, on page 42 of our brief, we explain that DHS by regulation normally has to decide whether to issue the NGA within 48 hours and it will serve it on the alien shortly thereafter. It's important to let an alien, an individual who you have detained in the United States, why they are being detained. But when the border patrol arrests the alien, and it's the one that issues the NGA because it's the investigating agency and it has knowledge of the charges, the government's detention decision is normally then made by ICE because the border patrol doesn't detain the individuals, ICE has to and it has to make the determination based on its resources. So then ICE has to make the determination and that's after the NGA is issued and we don't even know at that point whether the alien will get a bond from an immigration judge. So, Mr. Yang, I understand the logistical problems, but are you limited to just sending two or three documents? Could you send seven or eight or nine different documents? There's nothing that textually limits us, but there are practical considerations. As we explain, remember, we're talking about a volume here of like 500,000 NTAs per year. That's about 10,000 a week or 2000 a day on average. There is no interest in the government from balkanizing the notice, the written notice it has to provide because it multiplies our effort and introduces all kinds of potential for error. And there's never been any indication that the government ever does this except for the hearing notice. Justice Breyer? As far as I understand this, there's a statute that says a written notice, which means a notice to appear, a notice to appear, shall be sent to the alien containing a number of things and one of them is the time and the place of hearing. It seems to me to read it, it says send a notice, not four notices, a notice to appear which contains the following. And if you look at it practically, you say, well, if you have more than one document with some of this information, people are going to get mixed up. The aliens might get mixed up. On the other hand, it's more burdensome to the government. So I see things on both sides of the practicalities of it. So why don't we just go with the language? Well, I guess there's a few things that you asked there. One is about the practicalities and I can address that second because I actually think Petitioner's solution is worse than saying, providing clear indication that you're going to have a second notice with time and date information because you're going to have a date that's not correct. So I think his solution is actually the worst for aliens. But the main point is the text. The text is not quite as I think you may have suggested in the question. The text says that in removal proceedings, written notice in the section referred to as a notice to appear. So only in the section, this is a definitional, you know, shorthand in the section referred to as a notice to appear shall be given containing the information. The operative text doesn't have an A. It simply provides that written notice is required. We don't think the A really matters either way, but Petitioner's argument hinges on it. But if you look at the next paragraph, the next paragraph in paragraph two, Congress talks about requiring a written notice. Now, if that's true, Congress's omission of the operative text in one certainly must have import under Petitioner's theory, but clearly it does not. Not only that, if you look to just the way that collective singular terms are used when we're for Congress to have used a notice to appear, because that can naturally refer to multiple documents. We cited Oregon Supreme Court decision called Bonds. It talks about multiple documents comprising a notice to arbitrate. We cite that not because the case is a holding of a statute, it just illustrates that this is a typical way to refer to informational singular terms. And it would be pretty backwards for Congress to say written notice is required in this section referred to as a notice to appear and have that article intended to unambiguously, as Petitioner says, that article unambiguously shows that you need one document versus two. It just doesn't seem to be within the realm of certainly not unambiguous, but the much better argument is the otherwise, which is that written notice is required. And when that's particularly true, you look at the function of stop time rule. Congress wanted to stop the approval of time that aliens were collecting during the removal proceedings and make sure that the government was serious enough by providing notice, both of the charges and the scheduled hearing. But that function isn't served by saying whether it's in one document or two. All it requires, like any notice requirement, is that you give notice to the alien. And if the alien doesn't get notice, the alien has a remedy. If there is an intensity of proceedings, the alien can come at any time, immediately stops a removal and the alien can show that the alien didn't receive the required notice. Thank you, Justice Alito. Mr. Yang, I gather that the decision in this case will be important for a number of cases that arose before Pereira, maybe for some time after that. But what is the importance of a question for cases going forward? Mr. Zimmer says that the government is now providing time and place in the notice to appear. So what is the significance of this case for future cases? So the pipeline cases, there's about 1.2 million cases pending before the EOR at this point. But perspective cases, the problem is that we are not providing the hearing information on our NTA form for a substantial number. We don't have, we don't track this, but the best estimates that we have are in any given month or so, maybe a third of the non-detained cases, only non-detained cases, will have NTA. Remember, as I think I was discussing with Justice Thomas, there are problems about issue, when you issue the NTA, you don't have information for an arrested alien. When you have to issue that NTA promptly, and this is at page, we cite the reg at 287.3b and 42 of our brief, you have to issue that notice to appear promptly, but the border patrol is not going to be able to determine at that time whether the alien is going to be detained, whether, where the alien will be, and as a result, whether you put them on the detained or the non-detained docket. Now, the non-detained docket moves much more slowly. The detained docket for good reason has to move quickly. If we had to put everybody in our, temporarily in our custody on the detained docket, that would risk clogging the detained docket with all of these cases with aliens that simply are no longer detained, and it would slow the whole process down for aliens who actually are detained, and when, this is again at page 42 of our brief, you are tempted to have the automated scheduling system operate for a detained docket, but as we explain in our brief, the operational logistics are impossible to overcome because of the fluctuation in the detained population. Well, Mr. Zimmer says you have an easy solution. You could just ascertain what is the average time between the service of a notice to appear and the date and the time and place, and put that on the notice to appear, and that would invoke the stop time rule. If it turns out to be inaccurate, even 99% of the time, that doesn't bother him. No, I understand that position, but I think that just highlights how absurd this all is, because if the petitioner's problem is solved by setting a date, say three years in the future or and then resetting the date with the hearing notice, they still have to get notice of the sort of hearing notice, and that should solve the problem. The legislative history, which does not support the proposition, he thinks that Congress was concerned about disputes about the hearing notice, but the legislative history doesn't resolve that. Congress specifically addressed everything that it thought was important without changing, without providing any kind of clear one-document rule. It provided remedy for the alien if there was a problem with service. It provided for substantive information that must be provided before a hearing or certainly before an attempt to your removal or, in this case, to trigger the stop time rule. Thank you. Thank you, Mr. Yang. Justice Sotomayor? Mr. Yang, it is somewhat an unusual situation, because it's not as if the rule that the other side is asking us to implement stops the alien from being detained or changes the course of his or her hearing. Everything goes on. The only issue is whether the government gets the benefit of the rule. And there, the other side says there is an inherent value in having all of the information that is specified under the statute explicitly. It says a notice of appeal, a notice to appear must include these six or seven or eight items. And that's what entitles you to the benefit the statute confers against the alien and on the government. And you haven't really answered for me why that makes no sense and why your argument that you would be entitled to send out seven or eight pieces of paper, each one containing the individual items required under the statute. And then when you got to the end of all of them, the stopgap rule comes into effect. But the alien can't really know, because it can't control you from sending those notices out a month, two months, three months apart, six months apart, eight months apart. At some point, the alien is not going to know what you're talking about when you send the piece of paper. So please tell me why your logic makes more sense than the common sense logic of the statute says a notice to appear must have all of these items in it. Well, I think one of the premises is quite wrong, which is that Congress was intending this just to apply to the question of the stop time rule. The notice requirements apply much more broadly. And stop time rule only applies at most to affect 4,000 aliens per year. The more critical thing is in absentia removal. In absentia removal is also triggered by the written notice required in paragraph one. And Congress was concerned there, making sure that aliens could be removed in absentia. Isn't that the point though? Wouldn't it? That's exactly what your adversary is saying. No, it's exactly the opposite. Congress wanted to remove aliens and provided a remedy if they didn't get the notice. The remedy is that you can come in and you can say, I didn't notice that. They still have that remedy. But if you give them that information all at once, they no longer have a defense if they fail to show up at the specified hearing date. That's what your adversary is saying. Congress was intending to cut that argument off. There were 10 hearing notices in this case. That's not terribly unexceptional, right? Things get rescheduled. The date and time is going to change in almost every immigration hearing. There's usually a master calendar hearing that starts off and they schedule different hearings later. The idea that you would have to have it all in one document, particularly when Congress in 1229A2 provides for separate hearing notice later is an odd argument, particularly when the requirement is simply that of written notice. Thank you, counsel. Justice Kagan? Mr. Yang, your answer to Justice Thomas suggests to me that your statutory interpretation must be wrong. In other words, the idea that the government could separate out notice into seven different documents if it wanted to. The nature of the proceedings would be in one document and the charges would be in another document and so forth and so on. That just seems wrong to me. That makes me look harder at the statutory language. Indeed, the statutory language seems to cut very much against you. There is a definition here of the phrase, notice to appear. The statutory definition says that that phrase means written notice specifying the following things. If we do what we usually do with the statutory definition, we just plug in the definition in place of the defined term, we get a pretty clear answer on the stop time rule, that the period of presence ends when the alien is served a, and then you substitute this language, a written notice specifying the following. That seems pretty clear to me. It's a written notice specifying the following. One piece of paper specifying the following. Justice Kagan, I think it's exactly backwards. The defined term is notice to appear. The definition does not have the article A. The definition doesn't have the article A, but the stop time rule does have the article A. In other words, the definition, the defined phrase is simply notice to appear. Then you would plug in written notice specifying the following. You already have the article A in the defined term, in the operative statute. Then the definition comes after that A. If you read it as a whole, it's a written notice specifying the following. Justice Kagan, that A is in the defined term. The quotation marks are only around notice to appear. That's the defined term. That's what you plug in. Even Petitioner is not making that argument, Justice Kagan. Whenever Petitioner is making, that's the right way to read this definition. No, I think that's not quite right. If you take the parent's article for what it's worth, it says in this section referred to as a notice to appear. Notice to appear is the thing in quotes. That's what you're substituting written notice specifying the following for. I understand that, but if you look, obviously, A, with the quotes notice to appear, Congress included the article there. The idea that Congress, when it would put the article again in front of that defined term, later on in the stop time rule, it doesn't add anything to this. It's simply the same thing with the quotes. It seems to me this is perfectly clear. The way you wanted to read it, you would say, when the alien asserts A, A notice to appear. Anyway, I think it's pretty clear, Mr. Yang. If you said a notice of appeal, let's say that there was language that said that the losing party in a lawsuit has to provide written notice appealing a decision within 30 days. And even that, but this is without the parent's article. Suppose somebody said, okay, I'm going to send you two pieces of paper. In the first piece of paper, I'm going to give you my name. In the second piece of paper, I'm going to give you the judgment that I'm appealing from. How would that work out? Well, actually, I think that's a fairly helpful hypothetical for us because this court has already addressed notices to appeal. When they omit the signature requirement that was required to be on it, the court determined that that's okay. You can do that after the fact. And that's the essential question is that whether notice is adequately conveyed. Thank you, counsel. Justice Gorsuch? Mr. Yang, I'd like to just step back a moment. I guess I'm curious why the government is pursuing this at all given Pereira. I know it doesn't squarely address this, but I would have thought the government might've taken the hint from an eight justice majority in Pereira that notice of appeal means what it seems to mean. Well, if we had thought that Pereira actually says that, we would accept it, but we don't think it does. And we think the text supports our position best. And in addition, although we can provide a hearing date on certain non-detained aliens, for instance, an alien who's not going to be detained because they've already been in the country and they applied for a benefit and it's denied. And as a matter of course, government, Mr. Yang doesn't have to argue every possible jot and tittle of a statute. It has discretion here. It's just interesting to me that it's chosen to exercise it the way it has. Let me ask you this. What if I had a law clerk and I said in my law clerk manual, I want a bench memorandum analyzing the facts of the law and your proposed disposition. And instead of providing that, my law clerk provided three separate memos, each telling various views of the facts, four more on the law, and then, I don't know, a couple on proposed disposition. So that'd be a bench memorandum. You know, it might be, but I think in the context that would be ordinary speaker of English language, think that's a bench memorandum. Maybe not, but you could certainly say a notice could be provided by telling you when, you know, which memo to write. And then in a separate instruction, when to provide it. The government has actually mustered the courage to make a Chevron step two argument here, which is interesting to me. Why should the government get, if there's ambiguity here at the end of the day, after we exhaust everything, why should the government presumptively win? What about St. Thier and the deportation canon that suggests that ambiguity should be resolved in favor of presumptively free individual? We don't think that St. Thier actually stands for that proposition. In St. Thier, the court concluded that the presumption against retroactivity eliminated all the ambiguity, and that, you know, and in addition, you know, there was a very one sentence that mentioned some immigration principle for the benefit of the alien, but we don't think in the cases that the court has addressed in the Chevron context, the canon or the principle that the petitioner relies on just doesn't resolve the case. It is eye-breaking. The last question then arises from that is, how much ambiguity do we need to have in the government's view before we resort to Chevron step two? Kai, you know, do you want us to use some adjectives? Grievous? Well, what's the government's view on when Chevron step two is triggered? Well, Chevron step two, the court has repeatedly said that it just requires ambiguity on the question. And then that goes to the agency. The question then is whether the agency reasonably resolved it. And particularly... Thank you. Justice Kavanaugh? Good morning, Mr. Yang. I just want to make sure I understand the ramifications here of each side's position. If you were to lose, the IJ, the immigration judge, could still reject cancellation of removal and remove the non-citizen. It would just be discretionary rather than mandatory. Is that correct? That is true, but I would hesitate to note that one of Congress's key purposes in imposing these limitations on eligibility is to remove the ability for executive discretion. This court previously addressed suspension of deportation, which is the predecessor provision that cancellation of removal replaced and narrowed the eligibility requirements in a case called INS versus Empatia at 464 U.S. 183. And at page 185, the court said that the eligibility provisions were adopted, quote, specifically to restrict the opportunity for discretionary administrative action. And then the court goes on to say that the act of broadening that discretion is, quote, fundamentally inconsistent with that intent. And when Congress in 1996 then ratcheted down eligibility yet further, Congress certainly was not intending to just throw to the wind those eligibility requirements when it's possible that the executive could exercise its discretion in the same way. It had that choice in 96, chose not to do that route. To follow up on something Justice Thomas raised and then Justice Kagan followed up on, and just to make sure I understand your answer on the six or seven notices point, I understood you to say, but correct me if I'm wrong, that the actual operation of the system and the structure of the overall statute operates as a deterrent on the government doing any such thing because it just makes no sense for the government to do that. I think that's what I understood you to say, and I want to make sure I understand that. I think that's exactly right. Remember now we're talking about a system that has to process about 500,000 notices to appear per year. That's about 2,000 per day. And the idea that we would, you know, take what is a preset form with everything except the hearing date, which because we can't always provide the hearing date effectively, practically when we're doing that at an early stage, and all of a sudden break it into, you know, eight or 10 different documents, each of which, remember, we have to document we serve the alien. So we have to keep evidence of service of all of these things, proper service, that we then have the burden of establishing when we want to remove the alien who doesn't appear in offense yet. It's that fanciful to think that the government would ever do that. We want to do this. One last thing. I'm sorry. One last thing, Mr. Yang. I think Justice Kagan was suggesting that if your textual argument were right, the quote mark should be around a notice to appear, not just around notice to appear. Can you follow up on that? Yeah. I mean, I see the point that she makes, but I don't think that the Congress by simply a reference. And so whether they included the A in the quote or not, it's simply said in this section is referred to as a notice to appear when Congress did that. And then later in, you know, first of all, it's in this section. So the stop time rule is not this section. And this court determined that 1229BB5, which is the stop time rule, that it was a reference. It says a notice to appear under section 1229A. Justice Barrett? Mr. Yang, I want to go back to the difficulty that you described when the aliens are detained by border agents. You were talking about this in response to some questions by Justice Thomas. And you said in that case, you have to issue the NTA immediately or within 48 hours, but you don't necessarily know at that point where the detention facility will be. So here's my question. I mean, presumably now you're handling that by within 48 hours issuing a notice to appear that has all information except the time and the place of the hearing. Why can't you then, once the alien is put in a detention facility, at that point issue an NTA that has all the information because now they're in a detention facility and you know where they are? So we would then be issuing two notices to appear, but one with a hearing date later. The reason we, and I'm not saying that's not possible, but the reason that it's difficult is because the marrying up of written notices with the physical A file, the NTA form, and doing that on the volume that we're talking about, plus within the timeline. Remember, if you want to schedule these hearings promptly, you can do it within 10 days of service of the written notice under 1229A. But when the immigration court sets the hearing date, it may not know how long it's going to take to get that service to appear. No, no, no. I'm not saying you rely on the immigration court setting the date. I'm saying that once a non-citizen is put in a detention facility, you can't DHS at that point. You know, Justice Alito talked about issuing notices to appear that maybe have estimated dates. I mean, couldn't you do that at that point? You could, but you still have the additional problem that one, the aliens, well, I take it back. In theory, you could. You have the additional problem that aliens will bond out and you will have holes in the docket. The immigration court had tried to put the detained docket on an automated system, and they just found the obstacles too great because of the fluctuations in the population. They tell me that the real issue is efficiently scheduling these hearings close together. If you have all these gaps, you end up having inefficient allocation, and that results in people waiting longer for hearings. So the ER would have to change its system to automate it. Back to the system that they already determined. This is on page 42 of our brief. It was not practicable with respect to the detained docket. Now, once they're non-detained, I guess you could do it again, but you've got the same problem. Let me ask you one other question. You said that part of the problem in having the immigration court issue the complete notice to appear that would have the time and date is that the immigration court doesn't like issuing the charges. So part of this seems to derive from the separation between DHS and then having the immigration courts housed within DOJ. But is that just reluctance on the part of the immigration court? Couldn't the immigration court simply include a copy of what you've already sent to the non-citizen and then on a separate document notice the time and place of the hearing and put them in the same envelope? Certainly, if we were to lose that case, that would have to be considered. But I can say, I mean, we've gone through this very clearly with the EOIR on this, and there's a strong view as the neutral adjudicator, they should not be taking steps to facilitate the prosecution. Thank you. Mr. Yang, would you take a minute for rebuttal? Thank you, Mr. Chief Justice. Congress specified in 12 times 29A that written notice should be required. And Congress specified both the form and the substance of the notice. The form is that it has to be in writing and it has to be served either personally or by mail. There is no dispute the petitioner received written notice of all of the information required in 1229A. That should be the end of the matter. Thank you, Mr. Yang. Mr. Zimmer, you have three minutes for rebuttal. Thank you, Mr. Chief Justice. I think ultimately it's revealing what the government does and does not say about the statute. I mean, ultimately, the government effectively admits that its position would allow it to chop all this information up however it wants. I mean, it could provide, as we explained in our brief, if the government's right that all it has to do is provide written notice in some form, it could provide all of the non-case specific information to every single non-citizen who enters the country and leave that out when it provides the specific charging information. And ultimately, all the government can say is, well, trust us not to do that. And that's generally not the way that this court would interpret statutes to have absurd results just because you trust the government not to carry out those results. And then ultimately, much of Mr. Yang's argument was just focused on the fact that this is hard to do. But ultimately, maybe this is hard to do. I mean, I can't dispute much of what he said, but the government doesn't get to avoid doing things just because they're hard to do. And if prior to IRIRA, the government, the statute specifically authorized the government to use the system it's defending here, it specifically told the government it could provide this time and place information in a separate hearing document. And in IRIRA, for whatever reason, Congress changed its mind and it moved that time and place information from an optional part of the order to show cause to a required part of the notice to appear. And again, as I emphasized before, the government has known this from day one in its post-IRIRA rulemaking. And this is at page 53A of our statutory appendix. In interpreting IRIRA, the government itself stated, and this is a direct quote, it recognized, quote, the language of the amended act indicating that the time and place of the hearing must be on the notice to appear. So maybe this was a hard problem, but it was a hard problem that the government knew from day one it was required by the statute to solve. And if the government ultimately decided that it couldn't solve that problem, its response was not to make the unilateral decision to ignore what it conceded to be Congress's clear instructions. Its solution was to go back to Congress and ask it to change the statute back to what it had said before. The government should not be able to ask now, ask this court to effectively bail it out from its failure to do what it knew it required by asking this court to adopt exactly the opposite interpretation of the statute that the government itself gave it right after it was enacted. Thank you very much. Thank you, counsel. The case is submitted.